**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ROBERT D. HAUGHIE                    *

       Plaintiff                    *

   v.                                    *            Civil Action No. AW- 12-1914

DR. QUILLO and                       *
DR. PAUL MATERA
                                      *
     Defendants
                                     ***

<u>**MEMORANDUM**</u>

Pending is Defendants' Motion to Dismiss or for Summary Judgment.  ECF No. 12.

Plaintiff was notified by this Court of his right to file a response and the consequences of failing

to do so.  ECF No. 13.  Plaintiff, however, has refused to accept any mail from this Court.[1]  *See*

ECF No.  4 and 16.  Because it is clear that Plaintiff has chosen to remain unapprised of the

progress and status of this case, the dispositive motion shall be considered without opposition.  A

hearing in this matter is unnecessary.  *See* Local Rule 105.6 (D. Md. 2011).   For the reasons that

follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted.

**Background**

In his Complaint, Plaintiff alleges he has continuously complained about his right knee,

right hip, and his back.   He notes he previously had orthoscopic surgery on his knee; suffers

from degenerative joint disease; and has damage to the L-5 vertebrae in his back.   He asserts he

has requested to see an orthopedic surgeon over one-hundred times, to no avail.  Plaintiff claims

the only treatment he has been given is a prescription for Motrin and Elavil, an anti-depressant,

but neither medication relieved his pain.  He alleges that the medicine provided actually raised

---

[1]  He has also refused to accept a copy of the dispositive motion mailed to him by counsel.  ECF No. 15.

his blood pressure and, therefore, he refused to take the Motrin and prescribed blood pressure medications. He asserts that in response to his refusal, Dr. Quillo and Dr. Matera refused to treat his knee, hip and back. ECF No. 1 at pp. 3 – 4.

Plaintiff claims that when he was seen by Physician's Assistant (PA) Jessica Cecil, he was told he would be required to purchase Motrin, because the medical provider does not prescribe medications that may be purchased through the commissary. Plaintiff states he repeatedly advised Defendants that his back, hip and knee were causing him great pain, but he received no treatment. He claims he has "been forced to endure substantial pain while Defendants have expressed one excuse after another for postponing and/or denying adequate medical treatment." ECF No. 1 at p. 4.

Plaintiff states that Defendants have violated his Eighth Amendment right because he has been made to suffer "enormous pain and suffering." He claims he is at risk of substantial disfigurement and severely crippling arthritis if he does not receive "appropriate pain medications" or proper treatment. ECF No. 1 at p. 4.

Defendants state that the conditions Plaintiff suffers are not serious medical conditions requiring treatment under Eighth Amendment standards, but assert Plaintiff has been provided appropriate treatment for his condition. They further allege that Plaintiff was uncooperative in his care, including refusal to take psychiatric medication to address his bouts of anger. Defendants state that Plaintiff reported his pain was alleviated by the medication. There is no evidence in Plaintiff's medical records indicating that his refusal to take the medication was based on concerns regarding his blood pressure. Plaintiff's refusals to cooperate with medical treatment did not, however, result in withdrawal of care. He was repeatedly evaluated and new methods for treatment attempted. ECF No. 12.

Specifically, Defendants assert that when Plaintiff entered Eastern Correctional Institution (ECI) on January 20, 2010, he immediately requested a consultation with orthopedic or neurology.  ECF No. 12 at Ex. 1.  Plaintiff was seen by Dr. Quilo on January 30, 2010 and given a muscoskeletal examination which revealed no pain, swelling or weakness.  *Id.* at Ex. 2 – 4. Quilo prescribed Neurontin for Plaintiff and ordered a cane to help him walk, but indicated that the examination did not reveal any basis for surgery.  *Id.*

On March 2, 2010, Plaintiff was treated in the Mental Health unit when he reported he needed to be on psychotropic medications because he was "getting mad and snapping at people." ECF No. 12 at Ex. 5 – 9.  He reported that he needed to go back on "psych meds" and was prescribed psychiatric medications to control his behavior.  *Id.*

On March 23, 2010, Plaintiff did not report for a scheduled medical visit.  *Id.* at Ex. 10. On April 19, 2010, Plaintiff was seen by Dr. Matera, who treated him for a skin abscess.  *Id.* at Ex. 11 – 12.  During the April 19, 2010 appointment Plaintiff did not complain of pain in his knee, hip or back.  *Id.*

On May 6, 2010, Plaintiff was examined by Dr. Quilo, who found no evidence of pain or weakness.  *Id.* at Ex. 13 and 15.  Dr. Quilo ordered a new cane for Plaintiff, a knee brace, and a shoe insole to help with his discomfort.  *Id.*

On August 20, 2010, Plaintiff reported that the Neurontin prescribed by Dr. Quilo was helping to alleviate his pain, but also admitted there were times he did not take his medications. A physical examination revealed no scoliosis in the back and that Plaintiff's right knee had a moderate reduced range of motion.  At the time of the examination, Plaintiff was using a splint for support to his knee.  *Id.* at Ex. 17 – 19.

Plaintiff renewed his request to see an "orthopedic about his knee and hip pain" on November 12, 2010, because Neurontin was less effective.  Upon examination, however, it was noted that Plaintiff was able to walk, sit and stand without signs of discomfort.  ECF No. 12 at Ex. 20 – 22.  On December 3, 2010, x-rays were ordered; they revealed no evidence of acute fracture, dislocation or subluxation in Plaintiff's right hip or knee.  *Id.* at Ex. 22.  The severity of his pain was noted as moderate with no signs of spasm or numbness noted.  *Id.* at Ex. 23 –25.

On December 13, 2010, Plaintiff was treated by Dr. Quilo when he complained of hypertension.  He did not mention pain to his knee, hip or back during the appointment.  *Id.* at Ex. 27 – 28.  The following day, Dr. Matera met with Plaintiff to discuss the x-ray results.  At that time Plaintiff voiced no complaints about pain.  *Id.* at Ex. 29 – 30.

On January 18, 2011, it was noted that Plaintiff was repeatedly non-compliant with his medications.  *Id.* at Ex. 31 – 32.  Plaintiff had missed more than half of a week of his medications. When he requested to stay on Neurontin he was informed of the importance of compliance; and he was advised that if he missed another 50% of medications in a week his medication would be discontinued without further warning.  *Id.*  Plaintiff falsely reported that the reason he was non-complaint was that security would not let him out at night and protested that he had only missed a few days.

On March 1, 2011, Plaintiff claimed his knee pain was a five out of a ten, indicating moderate pain.  *Id.*  at Ex. 33 – 35.  Examination of his back and knee revealed no distress, but Plaintiff was prescribed a non-steroidal anti-inflammatory (NSAID) and Motrin in addition to the Neurontin he was already taking.  *Id.*

On May 23, 2011, it was again noted that Plaintiff was non-compliant with his medications and, based on the previous warning provided on January 18, 2011, Plaintiff's

Neurontin prescription was discontinued.  At the time it was noted that Plaintiff was consistently a "no-show" for receiving evening medication.  *Id*. at Ex. 40.

On June 2, 2011, Plaintiff asked for a refill of his Neurontin prescription.  *Id*. at Ex. 41 – 42.  Plaintiff was advised at that time that the prescription had been discontinued because of his non-compliance with evening medications.  Notwithstanding his non-compliance, however, Neurontin was again prescribed in the morning as needed.  *Id*. at Ex. 42.  The physical examination performed the same day revealed Plaintiff was in no distress and there were no signs of skeletal tenderness or joint deformity.  *Id*. at Ex. 41.  On June 20, 2011, an order was made for a replacement knee brace after the one Plaintiff had was accidentally damaged.  *Id*. at Ex. 43.

On July 22, 2011, Dr. Quilo treated Plaintiff and renewed Plaintiff's order for a shower chair, cane, and knee brace.  *Id*. at Ex. 49 – 51.  At that time, Plaintiff's dosage of Neurontin was increased for additional pain management.  *Id*. at Ex. 49, 53 – 54.

On August 6, 2011, Plaintiff refused treatment.  *Id*. at Ex. 56.  On September 12, 2011, Plaintiff was found to be non-compliant with his psychiatric medications.  *Id*. at Ex. 58 – 61. Plaintiff did not complain of knee, hip or back pain again until November 20, 2011, when he reported to Dr. Quilo that his pain had progressed and the medications provided little relief.  *Id*. at Ex. 65 – 67.  Additionally, Plaintiff asked that medications be prescribed once a day because he often forgets the nighttime dose.  *Id*. at Ex. 65.   Plaintiff was educated about the importance of daily stretching and proper sleep positions.  Additionally, Dr. Quilo prescribed Amitriptyline, a medication used to treat neuropathic pain.  *Id*. On December 13, 2011, however, it was discovered that Plaintiff was refusing to take the Amitriptyline.  *Id*. at Ex. 68 – 69.  Plaintiff was then prescribed Robaxim, a medication used as muscle relaxant and relief of pain.  *Id*.

On February 7, 2012, Plaintiff was seen by Dr. Matera for his report of moderate pain, but appeared to be in no distress with a stable gait.  *Id*. at Ex. 70 – 74.  X-rays of Plaintiff's spine revealed mild to moderate degenerative changes.  Plaintiff's medications were reviewed and he reported taking his medications at a higher dosage than prescribed.  *Id*. at Ex. 72.  He also reported that Elavil gave him no side effects and that he was tolerating that medication well.  Based on Plaintiff's report, his Elavil dosage was increased.  Additionally, Plaintiff stated that Robaxim was providing relief.  *Id*. Dr. Matera advised Plaintiff that he may benefit from discontinuing his work assignment, but Plaintiff stated he was fine working.

On February 9, 2012, Plaintiff again refused to take the medications prescribed because he wanted to see an outside doctor.  *Id*. at Ex. 75.  On March 22, 2012, Plaintiff was treated by Dr. Quilo, who documented that Plaintiff was not taking any of the medications prescribed to him.  *Id*. at Ex. 76 – 77.  Despite his non-compliance with pain medication, however, Plaintiff did not complain of pain or request to see medical staff until June 8, 2012.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S.

825, 837 (1994).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844.   If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The undisputed record in this case does not support a finding that Plaintiff suffers from an objectively serious medical condition warranting the treatment he demands, to wit, surgery. Plaintiff never presented to the medical staff with the pain he describes in his Complaint and it is clear that he has exaggerated the seriousness of his condition for purposes of this litigation.  His continued non-compliance with pain medications is evidence that he did not require the relief he admitted the medications provided.  His disagreement with the course of treatment offered is not

a basis for an Eighth Amendment claim.  Accordingly, Defendants are entitled to summary

judgment in their favor.  A separate Order follows.


Date:  <u>December 6, 2012</u>                                          <u>                    /s/                    </u>
                                                                       Alexander Williams, Jr.
                                                                       United States District Judge